**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**


**ARTHUR FUNCHESS**                                    **CIVIL ACTION**


**VERSUS**                                             **NO: 14-2105**


**HOWARD PRINCE**                                      **SECTION: "H"(1)**


## ORDER AND REASONS

Before the Court is a Report and Recommendation from the magistrate judge recommending the dismissal of Petitioner's case (Doc. 18) and the Petitioner's objections thereto (Docs. 19, 20).  For the following reasons, this Court declines to adopt the Report and Recommendation and orders additional briefing.


## BACKGROUND

On May 25, 1978, Petitioner was involved in the murder and robbery of a car salesman.  Petitioner, who was sixteen at the time, and his co-defendant, a twenty-year-old man, admitted to engaging in the heavy use of drugs, including cocaine, heroin, and angel dust on the morning of the murder.  At some point, the two decided to go to a Dodge car dealership.  Once there, the

1

men were accompanied on a test drive of a van by the victim.  During the test drive, the car salesman was killed.  Petitioner admitted to hitting the victim with a piece of iron but not to killing him, while his co-defendant alleges that Petitioner was responsible for the beating death of the salesman.  Both men were charged with first degree murder.

On June 13, 1979, petitioner Arthur Funchess pleaded guilty to a reduced charge of one count of second degree murder in the 21st Judicial Court for Tangipahoa Parish.  He was thereafter sentenced to life in prison. At the time of his guilty plea and sentence, Funchess was a juvenile offender.

On June 25, 2012, the United States Supreme Court decided *Miller v. Alabama*, in which it held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."[1]  Subsequently, Petitioner filed a Motion to Correct Illegal Sentence in state court based on *Miller*.[2]  The Motion was denied by the trial court, and the Louisiana Supreme Court denied Petitioner's request for writs, stating that *Miller* does not apply retroactively.[3]

On September 3, 2014, Funchess filed the instant petition for federal habeas corpus relief in this Court.[4]  In his habeas claim, Petitioner states that he was sixteen years old at the time of the offense and that he was given a mandatory life sentence without any possibility of parole. He alleges that the mandatory sentence subjected him to "a state-court judgment that violates the Eighth Amendment of the United States Constitution resulting in cruel and

---

[1] 132 S. Ct. 2455, 2469 (2012).

[2] Doc. 3-1, p. 2.

[3] Doc. 3-1.

[4] Doc. 3.

unusual punishment" and "is clearly in violation of the United States Supreme Court decision in *Miller v. Alabama*."[5]  Relying on the Fifth Circuit's opinion in *Craig v. Cain*, which likewise held that *Miller* could not be applied retroactively,[6] the magistrate judge recommended the dismissal of Petitioner's habeas petition on those grounds.[7]

Since the Report and Recommendation was issued, however, the United States Supreme Court has provided further guidance on the retroactive application of its holding in *Miller*.  In *Montgomery v. Louisiana*, the United States Supreme Court held that "*Miller* announced a substantive rule that is retroactive in cases on collateral review."[8]  Accordingly, the holding in *Miller* should be applied to judgments, like Petitioner's, that became final before *Miller* was decided.  For that reason, this Court declines to adopt the Report and Recommendation and instead, considers Petitioner's request for habeas relief.

## **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2254, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  The threshold questions in habeas review under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") ordinarily are whether the petition is

---

[5] 132 S. Ct. 2455.
[6] 2013 WL 69128 (5th Cir. 2013).
[7] Doc. 18.
[8] 136 S. Ct. 718, 732 (2016), as revised (Jan. 27, 2016).

timely and whether petitioner's claims were adjudicated on the merits in state court. Specifically, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.[9]

Revised § 2254(d) states that pure questions of fact are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[10]  As to pure questions of law or mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[11] Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning."[12]

A state court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent.[13] An "unreasonable application" of United States Supreme Court precedent occurs when a state court "identifies the

---

[9] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

[10] 28 U.S.C. § 2254(d)(2).

[11] 28 U.S.C. § 2254(d)(1).

[12] *Bell v. Cone*, 535 U.S. 685, 694 (2002).

[13] *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.).

4

correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case."[14] It is well-established that "an unreasonable application is different from an incorrect one."[15]  A state court's merely incorrect application of Supreme Court precedent does not warrant habeas relief.[16] "Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA.[17]  Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents."[18]

## LAW AND ANALYSIS

### A. Timeliness and Exhaustion

At the outset, this Court notes that Petitioner has met all of the necessary threshold requirements to seek habeas relief.

First, this Court finds that Petitioner's filing is timely under 28 U.S.C. § 2244(d)(1)(C).  That is, it was filed within one year of the "date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

---

[14] *Williams*, 529 U.S. at 407–08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

[15] *Bell*, 535 U.S. at 694.

[16] *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

[17] *Harrington v. Richter*, 562 U.S. 86, 88 (2011).

[18] *Harrington*, 562 U.S. at 102; *see also Renico v. Lett*, 559 U.S. 766 (2010) ("AEDPA prevents defendants-and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

retroactively applicable to cases on collateral review."[19] As discussed above, *Miller* held, for the first time, that a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders is unconstitutional. The Supreme Court subsequently held that *Miller* announced a "substantive rule that is retroactive in cases on collateral review."[20]  *Miller* was decided on June 25, 2012, giving Petitioner one year from that date to file his petition with this Court.

Petitioner filed a motion based on *Miller* in state court on March 1, 2013—249 days into the period within which he had to seek habeas relief.  This filing tolled the one-year limitation period pending resolution of that motion.[21] Petitioner's state court proceeding remained pending until the Louisiana Supreme Court denied his request for writs on June 20, 2014.[22]  The remaining 116 days of the limitation period began to run again from that date, and Petitioner filed his petition on September 3, 2014—well within that period.[23] Accordingly, Petitioner's filing is timely.

---

[19] 28 U.S.C. 2244(d)(1)(C)

[20] *Montgomery*, 136 S. Ct. at 732.

[21] 28 U.S.C.A. § 2244 (2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").

[22] *Grillette v. Warden, Winn Corr. Ctr.*, 372 F.3d 765, 769 (5th Cir. 2004) ("The Supreme Court clarified in  *Carey v. Saffold*, 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002), that a state habeas 'application is pending,' in the context of § 2244(d)(2), 'as long as the ordinary state collateral review process is 'in continuance," or, in other words, 'until the application has achieved final resolution through the State's post-conviction procedures.' *Saffold*, 536 U.S. at 219-20, 122 S.Ct. 2134.").

[23] In *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998), the Fifth Circuit held that "a pro se prisoner's habeas petition is filed, for purposes of determining the applicability of the AEDPA, when he delivers the papers to prison authorities for mailing."  Funchess's petition declares that it was delivered for mailing on September 3, 2014.

Finally, Respondent admits—and this Court finds no reason to hold otherwise—that Petitioner has exhausted his state court remedies and is not otherwise procedurally defaulted.  Accordingly, this Court holds that there is no technical bar that prevents it from examining the merits of Petitioner's claim.

## B. Unconstitutional Sentence

Petitioner argues that in light of the Supreme Court's ruling in *Miller v. Alabama*, the mandatory sentence of life without parole that he received when he was sixteen years old is illegal and unconstitutional.  In light of the Supreme Court's clarification in *Montgomery v. Louisiana*, there is no longer a good faith argument that *Miller* does not apply retroactively.  The issue in this case, then, is whether Petitioner received a mandatory sentence of life without parole. Respondent contends that *Miller* does not apply to Petitioner's case because he received a sentence of life without parole for a period of 40 years.

While a seemingly simple inquiry, this question is complicated by an apparent disparity in Petitioner's record, which contains contradictory statements as to his sentence.  For instance, the judgment issued on July 31, 1979 declares a sentence "for the term of his natural life without benefit of probation or suspension of sentence," yet the transcript of his sentencing held on July 18, 1979 indicates that the presiding judge sentenced him to "the balance of [his] natural life, at hard labor, without benefit of probation or suspension of sentence, whereby [he] shall not be eligible for parole for a period of forty years." A minute entry from that hearing conveys the same.  In a record produced by the Louisiana Department of Corrections on November 28, 1979,

7

however, Petitioner's sentence is listed as life and the words "Not eligible" fill the box labeled "Parole Eligibility Date."

This issue was considered by the state court at a hearing on May 22, 2013 on Petitioner's Motion to Correct Illegal Sentence based on *Miller*. Counsel for the state argued that *Miller* does not apply to Petitioner because his sentence included an eligibility for parole in 40 years. Counsel for the state indicated that she contacted the Department of Corrections and was informed that Petitioner has a parole eligibility date of May 25, 2018. Upon hearing this and considering the transcript of Petitioner's 1979 sentencing, the state court judge found that Petitioner's sentence include parole eligibility in 40 years and therefore *Miller* was inapplicable.

This Court holds, however, that such a determination is not so easily made, and that the discrepancy is likely a result of Louisiana's "two-step parole procedure." This is the argument that Petitioner made at the hearing before the state court, and several times before.[24] Petitioner argues that his mandatory sentence is in conflict with Louisiana Revised Statute § 15:574.4 and that under that statute parole is not available to any man serving a life sentence.

At the time of Petitioner's sentence in 1979, two statutes were in effect: Louisiana Revised Statute § 14:30.1 stated, in part, that: "Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation, or suspension of sentence for a period of forty years."[25] Petitioner was sentenced under this provision.

---

[24] Doc. 3-1, p.18.
[25] Act 1977, No 121, § 1.

8

Louisiana Revised Statute § 15:574.4 (B) stated in part, however, that: "No prisoner serving a life sentence shall be eligible for parole consideration until his life sentence has been commuted to a fixed term of years."[26]  This statute "requires that those serving life sentences must first obtain a commutation by which the term of life is reduced to a fixed number of years, by petitioning the governor for clemency through the Board of Pardons, before becoming eligible for parole consideration."[27]  Petitioner contends that the conflict between these two statutes has rendered him ineligible for parole, despite what might otherwise be indicated by his state court record.

In *Louisiana v. Henderson*, the Louisiana Fourth Circuit Court of Appeal addressed a similar argument.  In that case, the defendant argued that the mandatory sentence of life without parole for a period of twenty years that he received conflicted with § 15.574.4 (B).  The court rejected this argument, stating that:

> We find no conflict in these statutes. As explained in *Bosworth v. Whitley*, 627 So.2d 629, 631 (La. 1993), **parole eligibility** is determined by the sentence meted out upon conviction, which is different from **eligibility for parole consideration**, as regulated by § 15:574.4. A similar constitutional challenge was rejected in *Bosworth*, where the court found that those sentenced to life imprisonment, with no restrictions regarding parole eligibility, were not deprived of any constitutionally protected liberty interest by the commutation requirement of § 15:574.4.[28]

---

[26]  Act 1968, No. 191.

[27] *Bosworth v. Whitley*, 627 So. 2d 629, 632 (La. 1993).

[28] *State v. Henderson*, 672 So. 2d 1085, 1092 (La. App. 4 Cir. 1996).

Indeed, the Louisiana Supreme Court has explained that "parole eligibility and eligibility for parole consideration are distinct and different matters."[29]  Said differently, even if a prisoner serving a life sentence becomes *eligible* for parole after 40 years, he cannot be *considered* for parole until his sentence is commuted into a fixed number of years by the governor.[30]  Section 15:574.4 "requires that those serving life sentences must first obtain a commutation by which the term of life is reduced to a fixed number of years, by petitioning the governor for clemency through the Board of Pardons, before becoming eligible for parole consideration."[31]  According to § 15:572, the governor may only commute a sentence upon recommendation of the Board of Pardons.  "The power of commutation, however, is constitutionally reserved exclusively to the executive branch of state government."[32]  This scheme has become known as Louisiana's "two-step parole procedure" and has been consistently upheld by Louisiana courts.[33]  To be sure, Petitioner's arguments to the contrary were denied by the state court in reliance on this precedent.[34]  Accordingly, this

---

[29] *Bosworth*, 627 So. 2d at 632.

[30] *See Thomas v. State, Louisiana Dep't of Corr. ex rel. Attorney Gen.*, 2013 WL 6858311 (La. App. 1 Cir. 2013) ("Therefore, Thomas is now eligible for parole, but he must obtain a commutation of his sentence to a fixed number of years in accordance with La. R.S. 15:574.4 in order to be considered for parole.").

[31] *Bosworth*, 627 So. 2d at 632; *Damone v. Whitley*, 694 So. 2d 1205, 1209 (La. App. 1 Cir. 1997).

[32] *State v. White*, 694 So. 2d 1205, 1209 (La. App. 1 Cir. 2014).

[33] *Bosworth*, 627 So. 2d at 632; *Henderson*, 672 So. 2d at 1092; *Rollins v. LA Dep't of Corr. Officers*, No. 14-100-SDD-RL, 2014 WL 4928992, at *2 (M.D. La. Oct. 1, 2014).

[34] Judge Bennett denied Petitioner's Motion to Correct Illegal Sentence on these grounds, holding that "[t]he identical issues were addressed in *State v. Henderson* . . . and in a similar situation in *Bosworth v. Whitley* . . . . For the reasons outlined in these cases, Mr. Funchess argument is without merit and the motion will be denied."

Court holds that, according to Louisiana state law, Petitioner is incorrect that § 14:30.1 conflicts with § 15:574.4(B). However, the inquiry does not stop there.

Under Louisiana's "two-step parole procedure," Petitioner's guilty plea to second degree murder required that he receive a sentence of life in prison without eligibility for parole for a period of 40 years and that, if he ever actually hoped to receive parole after 40 years, the governor commute his sentence. Before the governor can commute a sentence, however, he must receive a favorable recommendation from the Board of Pardons. In 2015, of the 804 applications received by the Board of Pardons for commutation or pardon, only 103 received favorable recommendations and were sent to the governor.[35] In 2014, 64 of the 931 applications garnered favorable recommendations.[36] Once an application reaches the governor, however, the decision of whether to commute a sentence is entirely up to his discretion and the political tides of the day. While previous governors have been more generous, Louisiana's most recent governor Bobby Jindal granted clemency to only 83 persons during his eight years in office.[37] Louisiana courts have held that prisoners serving a life sentence have "neither a constitutional nor an inherent right to commutation."[38] Considering all of these obstacles, a life sentence under

---

[35] LOUISIANA BOARD OF PARDONS & PAROLE, 2015 ANNUAL REPORT 22, *available at* http://www.doc.la.gov/wp-content/uploads/2016/01/Board-of-Pardons-and-Parole-2015-Annual-Report.pdf.

[36] LOUISIANA BOARD OF PARDONS & PAROLE, 2014 ANNUAL REPORT 23, *available at* http://www.doc.la.gov/wp-content/uploads/2014/12/2014-Board-of-Pardons-and-Parole-Annual-Report.pdf.

[37] Kevin Litten, *Bobby Jindal Grants Pardon to 21 Offenders, The Times-Picayune*, January 06, 2016, *available at* http://www.nola.com/politics/index.ssf/2016/01/bobby_jindal_grants_clemency_t.html.

[38] *Bosworth*, 627 So. 2d at 633; *see Damone v. Whitley*, 694 So. 2d 1205, 1209 (La. App. 1 Cir. 1997).

Louisiana's "two-step parole procedure" is—for all intents and purposes—a life sentence, regardless of whether the prisoner received a parole eligibility date. A parole eligibility date—whether Petitioner was given one or not—does little in the way of actually making parole a possibility.  As such, Louisiana's "two-step parole procedure" does not provide a "meaningful opportunity" for release.[39]  This Court holds that when it comes to juvenile offenders, *Miller* requires more.

In *Miller v. Alabama*, the United States Supreme Court explained that juveniles "are constitutionally different from adults for purposes of sentencing" because they have "diminished culpability and greater prospects for reform."[40] They lack maturity and a developed sense of responsibility, which can lead to "recklessness, impulsivity, and heedless risk-taking."[41]  They are more vulnerable to negative influences and pressures and have limited control over their environments.[42]  Finally, a child's character is "less fixed" and "less likely to be evidence of irretrievable depravity."[43]  For all of these reasons, the Supreme Court has on many occasions held that juveniles must be treated differently from adults for purposes of sentencing.[44]  In *Miller*, it stated that mandatory life sentences "by their nature, preclude a sentence from taking account of an offender's age and the wealth of characteristics and

---

[39] *Miller*, 132 S. Ct. at 2469 (citing *Graham v. Florida,* 560 U.S. 48, 74 (2010), as modified (July 6, 2010)) ("A State is not required to guarantee eventual freedom," but must provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation").

[40] 132 S. Ct. at 2464.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.; Roper v. Simmons*, 543 U.S. 551, 569 (2005); *Graham*, 560 U.S. at 68.

circumstances attendant to it."[45]   It further stated that "criminal procedure laws that fail to take defendants' youthfulness into account at all would be flawed."[46]   While "a State is not required to guarantee eventual freedom," it "must provide some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a disproportionate punishment."[47]   The Supreme Court went on to say that it believes that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon."[48]

This Court holds that in light of the precedent established by *Miller*, the state court was unreasonable in failing to apply it to Petitioner's case.   The "two-step parole procedure" clearly violates *Miller* in its application to juvenile offenders, and therefore, regardless of whether or not Petitioner's record indicates that he is "eligible" for parole, his sentence was unconstitutional.

Petitioner was sixteen years old at the time of the crime at issue here. He was high on drugs and under the influence of his adult co-defendant. At his plea hearing, he testified to "hanging up" his life and feeling unwanted.[49] These are the sort of facts that *Miller* requires be considered in choosing an appropriate sentence for juvenile offenders.   Because these factors were not

---

[45] *Id.* at 2467.

[46] *Id.* at 2462.

[47] *Id.* at 2469 (internal quotations omitted) (quoting *Graham*, 560 U.S. at 74).

[48] *Id.*

[49] Transcript of Plea Hearing at 7, *State v. Arthur Lee Funchess* (No. J-5735) (June 13, 1979) ("I was under heavy doses of drugs and I was already hanging up. My family, when they separated, you know, I was already hanging up, feeling I wasn't wanted so, you know.").

considered and the court imposed what amounts to a mandatory life sentence with no *meaningful* opportunity to obtain release, this Court holds that *Miller* mandates that Petitioner is entitled to habeas relief.

## CONCLUSION

For the foregoing reasons, the Court finds that the Petitioner's substantive claim for habeas corpus relief has merit.  The Court, however, requires additional briefing to determine the relief warranted.

Accordingly;

IT IS ORDERED that within 30 days of the issuance of this order, each party shall file briefs with this Court on the issue of what relief should be granted to Petitioner in light of the holdings herein.

IT IS FURTHER ORDERED that a federal public defender is conditionally APPOINTED on Petitioner's behalf for the purpose of said briefing.  Petitioner shall complete the attached financial affidavit form and submit it to the Court no later than March 10, 2016 to determine eligibility for this appointment.

New Orleans, Louisiana this 25th day of February, 2016.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

14